## James R. Martin v. Catherine Martin.

(Decided March 1, 1927.)

Appeal from Jefferson Circuit Court
(Chancery Branch, First Division).

1.  Divorce—Judgment Cannot be Reversed in so Far as Granting Divorce.—Court of Appeals has no power to reverse a judgment in so far as it grants a divorce.

2.  Divorce—$15,000.00 Alimony in Addition to Half Interest in Certain Property Held Excessive and Reduced to $10,000.00, Where Husband's Property was Worth Between $50,000.00 and $60.000.00.—In action for divorce on ground of cruel and inhuman treatment, in which husband stated that his property, after deducting his debts, was worth little more than $50,000.00, though wife claimed that after deducting value of half interest in certain property it was worth more than $57,000.00; $15,000.00 alimony and half in-

terest 'in certain property held excessive award, and reduced to $10,000.00 alimony and half interest in property.

3. Divorce—In Divorce Action, $1,500.00 Attorney's Fee Allowed Wife Held Not Excessive, where Husband Counterclaimed for Divorce, and $10,000.00 Alimony and Half Interest in Property was Awarded Wife.—In action for divorce on the ground of cruel and inhuman treatment, in which husband counterclaimed for divorce on the ground of abandonment, and in which $10,000.00 alimony and half interest in certain property was awarded wife, held that attorney's fees of $1,500.00 allowed to wife, while liberal, would not be disturbed.

EDWARDS, OGDEN & PEAK for appellant.

JAMES P. GREGORY and BRENT C. OVERSTREET for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

The parties to this appeal were married to each other on the 27th day of December, 1898, and they lived together as man and wife in the city of Louisville from their marriage until the year 1922, when they moved to a farm in Shelby county, although appellant continued to conduct his business in the city of Louisville.

As a result of the marriage three children were born to them, the youngest at this time being a son about twenty-one years of age. So far as this record discloses there was no trouble between them until 1923, culminating in February, 1924, when the appellee filed her petition in the Jefferson circuit court against appellant seeking a divorce on the ground of cruel and inhuman treatment. This action was dismissed a few days after it was filed, the appellant having persuaded appellee to dismiss the action. She had not left the home of appellant at the time she instituted that suit. She continued to live with her husband on the farm in Shelby county until the 30th day of June, 1924, when she filed her petition in this case, again alleging as her grounds for divorce cruel and inhuman treatment. She did not immediately leave the home of appellant on the farm in Shelby county after the filing of this action, but appears to have remained there for two or three months after the filing of the suit. She left the Shelby county home in the fall of 1924 and returned to Louisville and took up her abode there. In this suit appellee obtained a restraining order to prevent appellant from disposing of property. She sought, in addition to a divorce, maintenance at the rate of $250.00 a month and $50,000.00 alimony. The question of main-

tenance during the pendency of the suit was disposed of by agreement of parties and appellant paid appellee $25.00 a week during the pendency of the action.

Appellant filed his answer to the petition traversing its allegations. Later he filed an amended answer and counterclaim seeking a divorce from appellee on the ground of abandonment without fault or like fault on his part. A year later appellee filed an amended petition in which she alleged that she was compelled to leave the home of appellant by reason of his cruel treatment and that she was, therefore, entitled to a divorce on the ground of abandonment.

With her amended petition appellee filed interrogatories to be propounded to appellant, and subsequently he answered these interrogatories, which related to the extent and value of his property. According to his statement, made under oath, his property, after deducting his debts, was worth a little more than $50,000.00. He does not disclose the amount of his income. Appellee insists that his statements made under oath show that his property was worth more than $66,000.00 before deducting the value of the half interest in certain property standing in the name of his wife and more than $57,000.00 after deducting the value of that interest.

Proof was taken by both parties, each attempting to justify his or her conduct.

The chancellor adjudged that appellee was entitled to absolute divorce and entered judgment accordingly. He further adjudged that appellee was the owner and entitled to hold and retain in her own right an undivided one-half interest in the property known in the record as the Market street property. In addition to allowing appellee to retain the half interest in this property he awarded her the sum of $15,000.00 alimony, with interest from the date of judgment. He also allowed her $1,-500.00, to be paid to her for services rendered by her attorneys.

The correctness of the judgment of the chancellor is challenged by appellant, and he makes an attack upon the judgment which is impressive. In her claim of cruel and inhuman treatment appellee alleged two grounds, (1) that appellant charged appellee with adultery and (2) that he was infested for eight or ten years with vermin.

About 250 pages of evidence was taken and we have endeavored to consider all of it carefully. Appellant in-

sists that there was not sufficient proof to establish cruel
and inhuman treatment and that appellee did not prove
abandonment on the part of the appellant. He further
insists that if abandonment was proven, or if cruel and
inhuman treatment was established, still the allowance
of alimony as made by the chancellor is excessive and
confiscatory and that the attorneys' fee which was
allowed is excessive.

When these parties were married in 1898 neither
of them had money or property. Appellee was engaged
in working at a cigar factory at the time. The proof
establishes clearly that appellee has been a hard working,
thrifty woman, as the appellant has been a hard working
and thrifty man. The property owned by appellant was
accumulated because of thrift and industry on the part
of both of them. They lived in comfort and peace until
appellant purchased the Shelby county farm and moved
his family there. Their two daughters were married and
the son resided with them at a home on the farm. Appel-
lant was not at home during the day except on Sunday,
as he went to Louisville early in the morning and was
there engaged in his business until the day was over,
when he returned to his home for the night. He was a
wholesale produce merchant. Appellee thinks that she
was expected to look after the farm and testified that she
was directed to do so by appellant. Appellant denied
this, and it is evident that appellee was not particularly
fitted for farming as she had never resided on a farm
prior to their moving to the farm in Shelby county. She
was accustomed to go over the farm and talk with those
engaged in working for appellant. There should be no
criticism because of the interest which she manifested in
the work going on in connection with the farm opera-
tions. One Webster rented a portion of the farm to cul-
tivate on the shares. Webster owned a small farm adjoin-
ing the farm of appellant. The proof shows that Webster
worked a part of the time for appellant, but it appears
that he was at the home of appellant consulting with ap-
pellee more frequently than appears necessary. He was
there almost every day and on each occasion he had a
talk with appellee. It is not made to appear from the
evidence that anything out of the ordinary took place
between them. However, the jealousy of Mrs. Webster
was aroused and she began to take notice of things.

Appellee had been away from home for about two weeks and upon her return she made a trip over the farm and she saw Webster, and while she was engaged in a conversation with him Mrs. Webster approached them and heard a part of the conversation. She stated that they went away when she made her presence known. Appellee was talking loud and she could understand what she said but could not understand what her husband said. There was nothing improper in the conversation as detailed by Mrs. Webster. Other witnesses saw appellee and Webster together, and they stated that they sat under a cherry tree and talked for as much as an hour and a half. They sat very close together. Mrs. Webster thought she had sufficient evidence to report to appellant although he was resting under no suspicion and no thought of improper conduct on the part of his wife. Mrs. Webster told appellee that she was going to tell appellant what she had seen, and when appellant returned home that night he learned that Mrs. Webster wanted him to call to see her. He did so and received such details of the meeting between Webster and appellee as a jealous and excited woman could give. Naturally appellant was angered and when he returned to his home, according to the evidence of appellant and appellee, he wanted to know of appellee how long this had been going on. He made no charge against her but there was an angry scene between them and there is a sharp conflict in the evidence as to what took place. Appellant testified that appellee said it had been going on about two months but there had been nothing wrong between her and Webster and that Webster had gone no further than to kiss her. It is vehemently denied by appellee that she made any such statement. Appellant left his home that night and returned to Louisville, but he returned to his home either believing that his wife had been guilty of no improper conduct or that if she had he would forgive her. There is meager proof in the record that he made some statements to other parties that he believed his wife had been guilty of improper relations with Webster, but he denied all of this and said he never made any statement other than to mention to one or two of his friends what Mrs. Webster had told him.

Webster was advised by his wife that she was going to report to appellant what she had seen between him and appellee and he lost no time in fleeing the country. He

deserted his family immediately and never returned to them. He testified in the case in behalf of appellee and denied that there was anything at any time between him and appellee which was improper.

The chancellor was of the opinion that appellant had been guilty of cruel and inhuman treatment, and while we find little to uphold his judgment in this respect there is some evidence in the record from which he might have reached that conclusion. A divorce was granted to appellee and we cannot disturb that judgment. Under all the facts in the case we have reached the conclusion that the amount of alimony allowed was too large. In our opinion $10,000.00 should have been allowed appellee instead of $15,000.00. The chancellor allowed her to retain title to a one-half interest in certain property and that will not be disturbed. The fee allowed to the attorneys for appellee is liberal, but we have reached the conclusion that we will not disturb that allowance. The allowance of $15,000.00 alimony will be reduced to $10,000.00, and otherwise the judgment of the chancellor is substantially correct.

The judgment is reversed for proceedings consistent with this opinion.